## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**ex rel. SHEILA S. BROWN,**<br><br>      **Plaintiff,**<br><br>        **v.**<br><br>**ARAMARK CORPORATION and**<br>**ARAMARK HEALTHCARE SUPPORT**<br>**SERVICES,**<br><br>      **Defendants.** | **Civil Action No.  01-2086 (JDB)** |

## MEMORANDUM OPINION

Plaintiff-relator Sheila Brown ("plaintiff" or "Ms. Brown") brings this action pursuant to the qui tam provisions of the False Claims Act ("FCA").  Plaintiff alleges that defendants Aramark Corporation ("Aramark Corp.") and Aramark Healthcare Support Services ("Aramark Healthcare") (collectively "Aramark") presented false claims and made false statements to the United States in billing for food and related services provided to Medicare and Medicaid patients at Johns Hopkins Bayview Medical Center.  Ms. Brown also asserts two common law claims related to the alleged fraud, and a retaliation claim under the FCA.  Currently before the Court is Aramark's motion to dismiss the five-count Complaint in its entirety pursuant to Rule 12(b)(6) (FCA claims) and Rule 12(b)(1) (common law claims) or, alternatively, Rule 41(b).  In response, plaintiff opposes Aramark's motion to dismiss, but concedes that she lacks standing to bring the common law claims and also asks the Court to stay its decision on the retaliation claim pending discovery.  Upon careful consideration of the motion, the parties' several memoranda, the applicable law, and the entire record, the Court will grant Aramark's motion and will dismiss all

five counts of the Complaint.

## <u>BACKGROUND</u>

The United States administers the federally-funded Medicare and Medicaid programs through the Department of Health and Human Services ("DHHS") and the Centers for Medicare and Medicaid Services ("CMS").  <u>See</u> Compl. ¶ 9.  CMS is authorized to enter into and administer contracts on behalf of DHHS and the United States.  <u>See id.</u>  This authority includes the power to contract with providers and suppliers.  <u>See id.</u>  When CMS enters into such contracts, it pays for services provided to Medicare and Medicaid program beneficiaries.  <u>See id.</u> ¶ 10.  These payments are typically made through a fiscal intermediary -- <u>i.e.</u>, an insurance company that processes provider claims for payment under Medicare Part A.  <u>See id.</u> Consequently, healthcare providers, such as hospitals, submit cost reports to a fiscal intermediary for certain expenses such as the cost of providing meals to Medicare and Medicaid program beneficiaries.  <u>See id.</u>  CMS, in turn, pays the provider, through the intermediary, for the provider's Medicare- and Medicaid-related costs.  <u>See id.</u> ¶¶ 10-11.

Johns Hopkins Bayview Medical Center ("Bayview") is an acute care hospital and healthcare center in Baltimore, Maryland.  <u>See id.</u> ¶ 6.  Bayview provides inpatient hospital care and other healthcare services to beneficiaries under the Medicare and Medicaid programs.  <u>See id.</u>  During the time period relevant to the Complaint, Bayview contracted with Aramark Healthcare to manage its food service department.  <u>See</u> Defs.' Ex. 1 at 1.  Under the contract, Aramark Healthcare was responsible for all on-site preparation and service of food at Bayview -- including food service for patients, staff, employees, and visitors.  <u>See id.</u>  The original plaintiff-relator in this case, Earle Brown ("Mr. Brown"), was employed by Aramark Healthcare as a food

service production manager.  See Compl. ¶ 5.  In that position, he was responsible for "ordering and delivering food to multiple Bayview food service consumers."  Id. ¶ 14.  Mr. Brown was employed at Bayview by Aramark Healthcare from approximately March 1999 until January 2000.  See id. ¶ 16.

Mr. Brown initiated this action by filing the Complaint on September 28, 2001, at which time it was assigned to another judge of this Court.  The Complaint alleges that Aramark committed fraud by billing the Government for:  (1) patient meals made from recycled food; and (2) food and other resources used at private functions that were unrelated to Medicare or Medicaid.  See id. at 2.  By virtue of these practices, the Complaint asserts that the cost reports and claims for payment submitted by Aramark to Bayview for Medicare- and Medicaid-related expenses -- which were subsequently submitted to CMS for payment, through a fiscal intermediary -- were inflated and fraudulent.  Id. ¶ 11.  Hence, plaintiff alleges that Aramark violated the False Claims Act, 31 U.S.C. § 3729(a)(1)-(2), by knowingly presenting false or fraudulent claims to the United States for payment, and by making false records or statements to get false or fraudulent claims paid by the Government.  See id. ¶¶ 21-26.  The Complaint also alleges that Mr. Brown was wrongfully terminated from his employment with Aramark Healthcare in retaliation for his refusal to participate in the alleged illegal activities at Bayview. See id. ¶¶ 37-38.

The United States investigated Mr. Brown's allegations, but on March 24, 2003 the Government filed notice of its election to decline to intervene.  The case then sat dormant for more than four years.  During that time, Mr. Brown died in an auto accident.  See Pl.'s Mem. in Opp'n to Defs.' Mot. Dismiss ("Pl.'s Opp'n") at 9.  On November 8, 2007, the case was

reassigned to the undersigned judge.  Subsequently, on December 11, 2007, with no government intervention and no notice of Mr. Brown's death, the Court unsealed the Complaint and ordered it to be served on defendants.  The Court also denied a prior motion for leave to file an amended complaint, but gave plaintiff an opportunity to file a renewed motion by not later than January 2, 2008.  See Order, Dec. 11, 2007.  When a timely response to the December 11 Order was not received, the Court ordered plaintiff to file proof of service of the existing complaint or a renewed motion for leave to file an amended complaint by January 17, 2008.  See Order, Jan. 8, 2008.  Finally, on January 17, 2008, Mr. Brown's wife, Sheila Brown, filed a motion notifying the Court of her husband's death, seeking to substitute as plaintiff and relator in her husband's stead, and seeking leave to file the original complaint upon defendants within 120 days of the Court's December 11, 2007 Order.  The Court subsequently granted Ms. Brown's motion.  See Order, Feb. 19, 2008.  Aramark was served with a summons and the Complaint on April 10, 2008.  Aramark's answer was filed on May 30, 2008, and its motion to dismiss followed soon thereafter.

## LEGAL STANDARD

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Leatherman v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979).  Therefore, the factual allegations must be presumed true, and plaintiffs must be given every favorable inference that may be drawn from the allegations of fact.  Scheuer, 416 U.S. at  236; Sparrow v. United Air Lines, Inc., 216 F.3d

1111, 1113 (D.C. Cir. 2000).  However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint.  Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court is mindful that all that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atl. Corp., 127 S. Ct. at 1964-65; see also Papasan, 478 U.S. at 286. Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp., 127 S. Ct. at 1965 (citations omitted).

For claims involving fraud, however, the Federal Rules of Civil Procedure provide for a heightened pleading standard.  Rule 9(b) requires that in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Although the particularity requirement distinguishes fraud claims from ordinary civil pleadings, Rule 9(b) is still subject to the general "short and plain statement" command set out in

Rule 8.  United States ex rel. Williams v. Martin-Baker Aircraft Co., Ltd., 389 F.3d 1251, 1256

(D.C. Cir. 2004) (explaining that Rule 9(b) is not the "antithesis" of Rule 8).  Consequently, to

satisfy Rule 9(b), the "pleader must state the time, place and content of the false

misrepresentations, the fact[s] misrepresented and what was obtained or given up as a

consequence of the fraud."  United States ex rel. Joseph v. Cannon, 642 F.2d 1373, 1385 (D.C.

Cir. 1981).

## DISCUSSION

### I.    All Counts of the Complaint Should Be Dismissed.

Plaintiff's Complaint contains five counts:  (I) presentation of false claims under the

FCA, 31 U.S.C. § 3729(a)(1); (II) presentation of false statements under the FCA, 31 U.S.C. §

3729(a)(2); (III) unjust enrichment; (IV) payment by mistake of fact; and (V) wrongful

termination and retaliatory discharge under the FCA, 31 U.S.C. § 3730(h).  See Compl. ¶¶ 21-38.

Ms. Brown has already conceded that two counts, Counts III and IV, must be dismissed for lack

of subject-matter jurisdiction.[1]  Aramark asserts that the remaining counts should be dismissed

pursuant to Rule 12(b)(6) because they fail to state a claim upon which relief can be granted.[2]

Aramark first argues that Counts I and II should be dismissed because they are not pled

with the particularity required by Rule 9(b) for claims involving fraud.  See Defs.' Mot. at 6-11.

---

[1] In response to Aramark's motion, Ms. Brown conceded that she lacked standing to bring Counts III and IV.  See Pl.'s Opp'n at 9.  Therefore, the Court will dismiss these claims for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).

[2] Aramark also argues that the entire Complaint should be dismissed pursuant to Rule 41(b) for failure to prosecute.  See Defs.' Mem. in Supp. Mot. Dismiss ("Defs.' Mot.") at 16-18. Because the Court concludes that there are independent grounds to dismiss each count of the Complaint, it will not reach the Rule 41(b) argument.

Aramark then argues that even if Counts I and II pass muster under Rule 9(b), plaintiff has still failed to state a claim because the alleged fraud could not have caused financial harm to the United States.[3]  See id. at 11-14.  Aramark also asserts that Count V should be dismissed pursuant to Rule 12(b)(6) because the Complaint does not allege that Mr. Brown was terminated or retaliated against for engaging in activities protected by the FCA as required by section 3730(h).  See id. at 15-16.  In response, plaintiff contends that the factual allegations in support of Counts I and II have been pled with the requisite particularity, and she asserts that the allegations, if proven to be true, will establish that the Government suffered financial harm as a result of Aramark's actions.  See Pl.'s Opp'n at 4-9.  With regard to Count V, plaintiff does not offer any substantive opposition to Aramark's motion, but instead asks the Court to stay its decision on the retaliation claim pending discovery.  See id. at 9.

The Court is persuaded that the Complaint fails to pass muster under Rule 9(b) with regard to Counts I and II, and that Count V should also be dismissed because plaintiff fails to state a claim for retaliation under section 3730(h) of the FCA.  Accordingly, the Court will dismiss the remaining three counts of the Complaint pursuant to Rule 12(b)(6).

## A.    Counts I and II -- False Claims and False Statements under 31 U.S.C. § 3729(a)

The FCA imposes liability on any person who knowingly presents a "false or fraudulent claim for payment" to the Government, or knowingly uses "a false record or statement to get a false or fraudulent claim paid" by the Government.  31 U.S.C. § 3729(a)(1)-(2).  A submission need not be an actual invoice to be a "claim" or a "statement" under the FCA because "claim" is

---

[3] The Court finds that this argument is more appropriate for a post-discovery motion for summary judgment, and hence declines to reach the argument at this time.

defined to include "any request or demand, whether under contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money . . . or if the Government will reimburse . . . any portion of the money."  31 U.S.C. § 3729(c).  Hence, the FCA essentially creates liability for "'all fraudulent attempts to cause the Government to pay out sums of money.'"  United States ex rel. Schwedt v. Planning Research Corp., 59 F.3d 196, 199 (D.C. Cir. 1995) (quoting United States v. Neifert-White Co., 390 U.S. 228, 233 (1968)).

Because qui tam actions under the FCA sound in fraud, the heightened pleading standard of Rule 9(b) applies.  See Williams, 389 F.3d at 1256; United States ex rel. Totten v. Bombardier Corp., 286 F.3d 542, 551-52 (D.C. Cir. 2002).  In the context of the FCA, Rule 9(b)'s particularity requirement obligates the pleader to identify "the time, place and content of the false misrepresentations, the fact[s] misrepresented and what was obtained or given up as a consequence of the fraud."  Cannon, 642 F.2d at 1385.  The particularity requirement serves several important purposes.  It "serves to discourage the initiation of suits brought solely for their nuisance value, and safeguards potential defendants from frivolous accusations of moral turpitude. . . .  And because 'fraud' encompasses a wide variety of activities, the requirements of Rule 9(b) guarantee all defendants sufficient information to allow for preparation of a response."  Id.  This means, inter alia, that "a relator must provide details that identify particular false claims for payment that were submitted to the government."  United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 36 F.3d 220, 232 (1st Cir. 2004).

Here, the putative fraud stems from allegations that Aramark billed the U.S. Government for expenses that were purported to be Medicare- and Medicaid-related, but instead are alleged

to have been unrelated to those federally-funded programs.  Plaintiff alleges that Aramark

defrauded the Government "by recycling food within Johns Hopkins Medical Center and billing

the government for that food."  Compl. at 2.  The Complaint also alleges that Aramark

committed fraud by "billing the government for food supplies and services, including employee

labor, which were used for private hospital functions and for Aramark Corporation employees'

personal use."  Id.  Plaintiff asserts that neither the recycled food nor the food used for private

purposes are eligible for reimbursement under Medicare or Medicaid, and "[c]osts which are not

eligible for payment under these federal health care programs should be designated as such" and

excluded from the cost reports and claims for payment submitted to Bayview for ultimate

payment by the Government.  Id. ¶ 11.

       In attempting to set forth the alleged fraud, the Complaint describes the manner in which

service providers, such as Aramark, are typically reimbursed for Medicare- and Medicaid-related

costs by the responsible government agency, CMS, through an intermediary.  See id. ¶¶ 9-11.

The Complaint next alleges that Aramark had an incentive to reduce its costs, by recycling food

and manipulating other aspects of food service delivery at Bayview, in order to increase its

profits.  See id. ¶¶ 12-13.  The Complaint then reiterates the central premise of plaintiff's case --

that the Government is "only responsible for meals and related costs provided to Medicare and

Medicaid eligible beneficiaries."  Id. ¶ 15.  However, nowhere in the Complaint are there any

allegations about specific instances when Aramark, or one of its agents or employees, submitted

cost reports -- or any other type of claim or invoice -- to Bayview, an intermediary, CMS, or any

other government agency, seeking payment for such improper expenses.  The remaining

allegations of fraud set forth in the Complaint relate to Aramark's alleged practice of recycling

food and diverting food and other resources to private functions unrelated to Medicare or Medicaid.  See id. ¶¶ 16-19.

Aramark argues that the Complaint fails to satisfy Rule 9(b) because it does not allege "the 'time, place or content' of a single false claim for payment submitted by ARAMARK or anyone else."  Defs.' Mot. at 9.  At most, Aramark argues, "the Complaint contains vague allegations that [Bayview] may have submitted cost reports to the government," but it fails to "identify a single specific cost report that contained false information, or any specific false information provided by ARAMARK for inclusion in such a report."  Id. at 9-10.  Aramark also contends that there is no allegation "that ARAMARK or anyone else sought payment from the government based on the cost reports."  Id. at 10.  Similarly, Aramark argues that plaintiff "has not alleged a single misrepresentation by ARAMARK [that was made or used] to obtain payment or approval of a false claim by the government."  Id. at 11.  Plaintiff responds that the Complaint "alleges with specificity, that the Aramark food service contracts and its subsequent invoices under the contracts submitted to Bayview [ ] constitute false records and/or statements on which the fraudulent cost report(s) submitted by Bayview [ ] to the United States for payment were based."  Pl.'s Opp'n at 6 (citing Compl. ¶¶ 10-11).  Moreover, plaintiff asserts that "the Aramark contract and the invoices referenced in that contract . . . all are potentially false records and all cost report reimbursements by the government for those invoices are potentially fraudulent."  Id.

Mindful that Rule 9(b) is not intended to be a formalistic bar to sub-standard pleadings, but rather a "guarantee [that] all defendants [have] sufficient information to allow for preparation of a response," Cannon, 642 F.2d at 1385, the Court nonetheless concludes that plaintiff has

failed to plead the allegations of fraud in support of Counts I and II with the required

particularity.  Even construing the Complaint liberally, in the light most favorable to plaintiff, it

still falls well short of satisfying Rule 9(b)'s particularity requirement because there are

absolutely no allegations regarding "the time, place and content of the false misrepresentations,

the fact[s] misrepresented and what was obtained or given up as a consequence of the fraud."  Id.

at 1385; see also Martin v. Arc of the District of Columbia, 541 F. Supp. 2d 77, 83 (D.D.C.

2008) ("plaintiff fails to plead with particularity a viable claim under the FCA because the

complaint fails to identify who, if anyone, made a false representation to the government and

fails to provide any of the purported details such as the time, place, and contents of the alleged

false representation"); United States ex rel. Alexander v. Dyncorp, Inc., 924 F. Supp. 292, 303

(D.D.C. 1996) (dismissing FCA claim on particularity grounds for failure "to state the date or

dates on which the allegedly false invoices were submitted, to give the invoice(s) number, to

identify the employees responsible for submission, and to state facts from which the Court can

infer a knowing violation on the part of defendants").

Here, plaintiff fails to allege any of the following in the Complaint:  dates upon which

invoices or cost reports for Medicare- and Medicaid-related costs were made or submitted by

Aramark, names and/or job titles of Aramark employees that were involved in preparing or

submitting the invoices or cost reports, the content of the invoices or cost reports (i.e., type of

costs included, amount of payments sought), the actual presentation -- by Aramark or any other

entity -- of a false claim to the Government for payment, or the making of a false record or

statement -- by Aramark or any other entity -- to get a false or fraudulent claim paid by the

Government.[4]  As the D.C. Circuit has stated, "Rule 9(b) does not require plaintiffs to allege

every fact pertaining to every instance of fraud when the scheme spans several years, [but]

defendants must be able to 'defend against the charge and not just deny that they have done

anything wrong.'"  Williams, 389 F.3d at 1259 (quoting United States ex rel. Lee v. SmithKline

Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001)).  Given the Complaint's vague allegations

of false claims and false statements, Aramark is not afforded the right to "defend against the

charge," but rather it is forced to offer a blanket denial "that [it has] done anything wrong."  Id.

Accordingly, Counts I and II of the Complaint will be dismissed.[5]

**B.      Count V -- Retaliation under 31 U.S.C. § 3730(h)**

Section 3730(h) is the "whistleblower" protection provision of the FCA.  It is designed to

protect qui tam relators who are subject to employment-related retaliation on account of their

conduct "in furtherance of an action under [the FCA]."  31 U.S.C. § 3730(h).  In pertinent part,

section 3730(h) provides:  "[a]ny employee who is discharged [or] demoted . . . because of

---

[4] Counts I and II fail, at least in part, because the Complaint's allegations of fraud center
almost entirely upon Aramark's underlying conduct (i.e., recycling food, improper use of food
and other resources), but ignore the circumstances that are necessary to state a claim under
section 3729(a)(1) or (a)(2) of the FCA, (i.e., knowingly presenting a "false or fraudulent claim
for payment" to the Government, or knowingly using "a false record or statement to get a false or
fraudulent claim paid" by the Government).

[5] Although no motion was made for a more definite statement pursuant to Rule 12(e), the
Court concludes that such a motion would be inappropriate here.  Rule 12(e) motions will be
granted if a complaint "is so vague or ambiguous that the party cannot reasonably prepare a
response."  Fed. R. Civ. P. 12(e).  Given the liberal nature of the pleading standards under the
Federal Rules, Rule 12(e) motions are typically disfavored by courts.  See Rahman v. Johanns,
501 F. Supp. 2d 8, 19 (D.D.C. 2007).  Hence, they are normally employed when the problem "is
unintelligibility, not mere lack of detail."  Burnett v. Al Baraka Inv. and Development Corp., 274
F. Supp. 2d 86, 110 (D.D.C. 2003).  As discussed above, the problem here is lack of detail, and
the Court finds that a more definite statement would not remedy the Complaint's deficiencies.

lawful acts done by the employee on behalf of the employee or others in furtherance of an action

under this section, including investigation for, initiation of, testimony for, or assistance in an

action filed or to be filed under this section, shall be entitled to all relief necessary to make the

employee whole."  In contrast to qui tam actions, retaliation claims are unconstrained by the

fraud pleading standard, and need satisfy only Rule 8's general pleading requirements.  See

Williams, 389 F.3d at 1259.

> To prevail on a retaliation claim, an employee must demonstrate that:
>
> (1) he engaged in protected activity, that is, "acts done . . . in furtherance of an
> action under this section"; and (2) he was discriminated against "because of" that
> activity.  To establish the second element, the employee must in turn make two
> further showings.  The employee must show that:  (a) "the employer had
> knowledge the employee was engaged in protected activity"; and (b) "the
> retaliation was motivated, at least in part, by the employee's engaging in [that]
> protected activity."

Id. at 1260 (quoting United States ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 736 (D.C.

Cir. 1998) (quoting S. Rep. No. 99-345, at 35 (1986), reprinted in 1986 U.S.C.C.A.N. 5266,

5300)).  For the first requirement -- engaging in protected activity -- "it is sufficient that a

plaintiff be investigating matters that reasonably could lead to a viable False Claims Act case."

Yesudian, 153 F.3d at 740 (internal quotation marks omitted).  Initiation of a private suit is not

required because the FCA's whistleblower provision was intended "to protect employees while

they are collecting information about a possible fraud, before they have put all the pieces of the

puzzle together."  Id.  However, protected activity does not include "[m]ere dissatisfaction with

one's treatment on the job," nor does it encompass "an employee's investigation of nothing more

than his employer's non-compliance with federal or state regulations."  Id.  To be afforded

whistleblower protection under the FCA, "the plaintiff's investigation must concern 'false or

fraudulent claims.'" Id. As for the second requirement -- employer knowledge of the protected

activity and a causal link to the retaliation -- the standard for employer notice is flexible, but

"[u]nless the employer is aware that the employee is investigating fraud, . . . the employer could

not possess the retaliatory intent necessary to establish a violation of § 3730(h)." Id. at 744

(internal quotation marks and alterations omitted); Williams, 389 F.3d at 1259-60.

Consequently, notice stemming from the performance of one's normal job responsibilities is

typically inadequate, see Yesudian, 153 F.3d at 744-45, but "when an employee acts outside his

normal job responsibilities or alerts a party outside the usual chain of command, such action may

suffice to notify the employer that the employee is engaging in protected activity." Williams,

389 F.3d at 1261.

Aramark argues that the Complaint fails to state a claim for retaliation because it does not

allege that Mr. Brown was terminated or retaliated against for engaging in protected activity.

See Defs.' Mot. at 15-16. In response, plaintiff does not offer any substantive opposition, but

instead asks the Court to stay its decision on the retaliation claim pending discovery. See Pl.'s

Opp'n at 9. There is no need for the Court to stay its decision because on the face of the

Complaint, plaintiff has failed to allege facts sufficient to state a viable claim for retaliation

under section 3730(h) of the FCA. Plaintiff has not alleged facts sufficient to support an

inference that either of the two elements of a retaliation claim -- (1) engaging in protected

activity or (2) employer knowledge of the protected activity and a causal link to the retaliation --

are present in this case. Instead, plaintiff's allegations of retaliation focus entirely on the adverse

consequences that are alleged to have resulted from Mr. Brown's refusal to participate in the

recycling of food and the diversion of hospital food to private functions. See Compl. ¶¶ 19

-14-

("Plaintiff's refusal was accomplished by routinely disposing of food defendant intended for recycling, during 'after hours' or on plaintiff's scheduled days off."), 38 ("As a result of plaintiff's unwillingness to participate in defendant's illegal conduct . . . plaintiff was reprimanded, punished, unofficially demoted, and blocked from seeking other employment within defendant Aramark's other companies, and ultimately terminated from employment by defendant").  Given a liberal reading, the allegations regarding Mr. Brown's "unwillingness to participate in defendant's illegal conduct" establish, at most, that Mr. Brown sought to remedy "his employer's non-compliance with federal or state regulations" regarding health and safety -- conduct that is not recognized as a protected activity.  Yesudian, 153 F.3d at 740.  There are no allegations in the Complaint to suggest that Mr. Brown ever investigated "false or fraudulent claims" or engaged in any other protected activity, nor is there any allegation that Aramark knew of Mr. Brown's activities, protected or otherwise.  Therefore, the Court concludes that plaintiff has failed to state a retaliation claim under section 3730(h), and it will dismiss Count V of the Complaint.

## CONCLUSION

For the foregoing reasons, the Court will grant Aramark's motion to dismiss, and will dismiss all five counts of the Complaint.  A separate Order accompanies this Memorandum Opinion.

/s/
JOHN D. BATES
United States District Judge

Dated:  December 29, 2008